IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JAMES ANTHONY BRIAN
MORELOCK,

      Defendant.

CRIMINAL ACTION NO.

1:19-cr-211-AT-CMS

## <u>REPORT AND RECOMMENDATION</u>

In this case, the Government has brought a single-count indictment against Defendant James Anthony Brian Morelock ("Defendant") for possession of a firearm by a convicted felon. [Doc. 16]. Defendant has filed four motions that are presently pending before the Court: a motion to dismiss the indictment[1] [Docs. 38, 43]; a motion to suppress evidence seized pursuant to a search warrant [Doc. 40]; and a motion to suppress statements Defendant made during the execution of the warrant [Doc. 36]. For the reasons that follow, I recommend that each of these motions be denied.

---

[1] Defendant filed an amended motion to dismiss the indictment on August 30, 2019. [Doc. 43].

## I.     <u>**MOTION TO DISMISS**</u>

On May 29, 2019, a grand jury sitting in the Northern District of Georgia returned an indictment against Defendant, charging him with possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1).   [Doc. 16].   The indictment alleges that on May 1, 2019, having previously been convicted of attempted bank robbery in this district on March 24, 1998, Defendant was in possession of two semi-automatic pistols.   [<u>Id.</u>].   The indictment also alleges that Defendant possessed the two firearms on May 1, 2019 "in and affecting interstate and foreign commerce."   [<u>Id.</u>].

Congress has restricted the possession of firearms by persons convicted of a felony punishable by a term of imprisonment longer than a year.   <u>See</u> 18 U.S.C. § 922(g)(1).   In his brief, Defendant acknowledges that he is subject to that restriction because he is a convicted felon, but he nevertheless argues that the indictment should be dismissed because Section 922(g)(1) is unconstitutional, both on its face and as applied to him.   [Doc. 38].   Defendant recognizes that the Eleventh Circuit has rejected similar arguments, but states that he is seeking to preserve this issue "for further review."   [Doc. 43 at 9].   The Government responds, and I agree, that Defendant's various arguments are foreclosed by binding Eleventh Circuit precedent.   [Doc. 46 at 2–14].

2

In United States v. Bonet, the Eleventh Circuit summarized the law in this area and rejected some of the same arguments that Defendant raises in this case:

> It is unlawful for a person who has been convicted of a felony to, among other things, "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). We have repeatedly upheld § 922(g)(1) as a facially constitutional exercise of Congress's power under the Commerce Clause because "it contains an express jurisdictional requirement." United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011); United States v. Wright, 607 F.3d 708, 715 (11th Cir. 2010); United States v. Scott, 263 F.3d 1270, 1273–74 (11th Cir. 2001); United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996). "[T]he jurisdictional element of the statute, i.e., the requirement that the felon 'possess in or affecting commerce, any firearm or ammunition,' immunizes § 922(g)(1) from . . . facial constitutional attack." Scott, 263 F.3d at 1273. Accordingly, we reject [the defendant's] argument that § 922(g)(1) is facially unconstitutional.

> [The defendant's] as-applied challenge is also foreclosed. [He] maintains that § 922(g) is unconstitutional as applied to purely intrastate possession of a firearm that does not "substantially affect" interstate commerce. Under binding circuit precedent, however, "§ 922(g) only requires that the government prove some 'minimal nexus' to interstate commerce, which it may accomplish by 'demonstrat[ing] that the firearm possessed traveled in interstate commerce.'" Wright, 607 F.3d at 715 (quoting Scott, 263 F.3d at 1274). Proof that the firearm or ammunition was manufactured outside of the state where the offense took place satisfies this burden. Id. Here, a "minimal nexus" to interstate commerce was established because [the defendant] admitted as part of his guilty plea that the firearm and ammunition he possessed were manufactured outside of the state of Florida, where the offense took place, and therefore traveled in interstate commerce. See id.

3

United States v. Bonet, 737 F. App'x 988, 989 (11th Cir. 2018).  The Eleventh Circuit's analysis in the Bonet opinion applies with equal force to Defendant's challenges to his indictment.  Defendant's arguments are not new or novel, and this Court is bound to apply the law as developed by the Eleventh Circuit.  As such, I refuse to entertain arguments that Section 922(g) is unconstitutional, either on its face or as applied.  See United States v. Rozier, 598 F.3d 768, 770–71 (11th Cir. 2010) (rejecting a Second Amendment challenge to Section 922(g)); Wright, 607 F.3d at 715 (rejecting a Commerce Clause challenge to Section 922(g)).

To the extent Defendant makes arguments about what he expects the evidence to show (e.g., "this is a case of constructive possession"), such arguments are not suited for a pre-trial motion to dismiss.  The Court is not permitted to review the sufficiency of the evidence that will be offered in support of an indictment's allegations, for "[t]here is no summary judgment procedure in criminal cases."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curiam).  "The sufficiency of a criminal indictment is determined from its face."  Id.  The Federal Rules of Criminal Procedure require that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  FED. R. CRIM. P. 7(c)(1).  "For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise

the defendant of what he must be prepared to meet." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations omitted). An indictment is sufficient "if it charges in the language of the statute" and apprises the defendant with reasonable certainty of the charged offense. See id.; Critzer, 951 F.2d at 307. Here, the indictment has done that.

To the extent Defendant wishes to preserve the issue for appeal, or some other "further review," he has done so. But in the meantime, I recommend that his motion to dismiss be denied. See United States v. Rozier, 598 F.3d 768, 770–71 (11th Cir. 2010).

## II.   MOTION TO SUPPRESS EVIDENCE

According to Defendant, the two guns that he is accused of possessing on May 1, 2019 were found in a safe at his residence during the execution of a federal search warrant. [Doc. 40 at 1]. Defendant now challenges the validity of the warrant and asks that all evidence regarding the two guns be suppressed.

On April 30, 2019, United States Magistrate Judge Alan J. Baverman signed a warrant authorizing the search of Defendant's residence, a single-family house in in Riverdale, Georgia (the "Residence"). [Doc. 40-1 at 1, 3]. The warrant authorized the seizure of all records and materials relating to violations of Title 18 United States Code Section 922(g) (possession of a firearm by a convicted felon)

and Section 931 (possession of body armor by a convicted violent felon). The items to be seized specifically included firearms and body armor. [Id.]. The warrant was supported by an application and affidavit executed by Matthew Winn, a Special Agent with the Federal Bureau of Investigation ("FBI"). [Doc. 40-2, Affidavit of Matthew J. Winn ("Winn Aff.")].

In his affidavit, Special Agent Winn stated that on March 19, 2019, the FBI received a tip on its website. [Winn Aff. ¶ 10]. The tipster stated that they[2] were aware that Defendant was a convicted bank robber and kidnapper who was in possession of firearms and body armor. [Id.]. The tipster stated that Defendant had shown the firearms and body armor to them. [Id.]. The tipster provided the address of the Residence and said that firearms were kept in the Residence, specifically in Defendant's bedroom and in a safe in the attic and that the body armor was located in Defendant's closet. [Id.].

According to Special Agent Winn, the FBI contacted the person whose name had been listed as the person providing the tip, but that person denied making the tip. That person, however, admitted knowing Defendant and one of Defendant's relatives ("Relative #1"). [Winn Aff. ¶ 11].

---

[2] I intentionally use the generic pronoun "they" to refer to single persons whose gender identity is unknown and to those who specify that "they" is their chosen pronoun.

On April 9, 2019, the FBI interviewed Relative #1, who stated that they believed that Defendant was currently in possession of several firearms and "SWAT style" body armor.  [Winn Aff. ¶ 12].  Relative #1 told the agents that Defendant keeps guns in a safe at the Residence and felt "confident" that guns were still located at the Residence.  [Id.].  Relative #1 said that they last saw Defendant physically possess the guns around Christmas 2018, at which time Defendant was cleaning three black semi-automatic pistols inside the Residence.  [Id.].

On April 25, 2019, the FBI conducted surveillance and witnessed Defendant leave the Residence at 7:30 a.m., apparently heading to work.  [Winn Aff. ¶ 13].  Four days later, the FBI interviewed a second relative of Defendant (Relative #2), who stated that they believed Defendant was currently in possession of several firearms and body armor.  [Id. ¶ 14].  Relative #2 told the agents that they had observed Defendant with semi-automatic pistols and black vest-style body armor within the past several years and that they had firsthand knowledge of firearms inside the Residence as recently as March 2019.  [Id.].

Special Agent Winn included in his affidavit the fact that Defendant's brother, Patrick Neil Sullivan, also lives at the Residence.  [Winn Aff. ¶ 15].  The affidavit disclosed that both brothers are convicted felons, both having been

convicted in 1998 of armed bank robbery and possession of a firearm during a crime of violence.  [Id.].

In his motion to suppress, Defendant challenges the warrant in three ways. First, he complains that Special Agent Winn's affidavit does not provide any information about the reliability of the confidential sources.  [Doc. 40 at 2–4]. Second, he argues that the information forming the basis for the probable cause finding is stale.  [Id. at 4–5].  Finally, he argues that Special Agent Winn failed to include material information that affected the probable cause finding, and Defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 171–72 (1978).  [Id. at 5–8].  I will address these arguments in turn.[3]

## A.    Whether the Confidential Sources Were Sufficiently Reliable

Defendant first argues that the affidavit did not have sufficient information in it to allow Judge Baverman to evaluate the "veracity and basis of knowledge" of

---

[3] The Government argues that Defendant has failed to establish that he has standing to challenge the warrant because he did not produce any evidence to show that he has a reasonable expectation of privacy in the areas of the Residence that were searched.  [Doc. 47 at 4–5].  I disagree.  At the evidentiary hearing on Defendant's motion to suppress statements, Special Agent Winn testified that he confirmed that Defendant lived at the Residence.  [Doc. 49 at 18].  Defendant's wife also testified that on the date the warrant was executed, Defendant lived at the Residence with her.  [Id. at 33].  Moreover, a condition of Defendant's bond is that he live at the Residence.  [Doc. 29].  This is ample evidence that Defendant lived at the Residence at the time of the search, and therefore had a reasonable expectation of privacy in it.

the confidential informants.  [Doc. 40 at 2–3 (citing Illinois v. Gates, 462 U.S. 213 (1983)].    According  to  Defendant,  the  agents  improperly  relied  upon uncorroborated statements of untested informants, and therefore the warrant lacked a probable cause basis.  [Id. at 4].

Probable cause exists when, under the totality of the circumstances, there is a "fair  probability  that  contraband  or  evidence  of  a  crime  will  be  found  in  a particular place."  United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012). "In  dealing  with  probable  cause,  as  the  very  name  implies,  we  deal  with probabilities.     These  are  not  technical;  they  are  the  factual  and  practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Illinois v. Gates, 462 U.S. 213, 231 (1983) (internal quotations omitted).  When reviewing another judge's probable cause finding, the reviewing judge should afford "great deference to judicial determination of probable cause to issue a search warrant."  United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995).

It is not improper to rely on a tip in finding probable cause.  On the contrary, the U.S. Supreme Court has held that a search warrant affidavit that recites the statements of an informant can provide a substantial basis for a finding of probable cause because an "explicit and detailed description of alleged wrongdoing, along

with a statement that the event was observed first-hand, entitles [an informant's] tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234. Although independent corroboration aids in assessing the informant's veracity, it is not required in every case.

In ruling on Defendant's motion, I must examine the totality of the circumstances—not just particular characteristics of the informants—to determine whether there was a fair probability that contraband or evidence of criminal activity would be found at the Residence.

The three informants in question—the tipster, Relative #1, and Relative #2—all had detailed, verifiable information. The tipster knew that Defendant was a convicted felon and knew the crime that Defendant had committed. [Winn Aff. ¶ 10]. The tipster also claimed to have personally observed Defendant possessing firearms and body armor and gave specific information about where those items were located within the residence. [Id.]. Relative #1 corroborated the information provided by the tipster, stating that they personally observed Defendant cleaning three black semi-automatic pistols at the Residence around Christmas 2018 and gave specific information about where the guns were located within the Residence. [Id. ¶ 12]. The agents verified portions of the information they had received,

10

including that Defendant was a convicted felon, the nature of Defendant's conviction, and the place where Defendant lived.[4]  [Id. ¶¶ 13, 16].

The agents then went one more step; they interviewed Relative #2, who also claimed to have personally observed Defendant with semi-automatic pistols and body armor and claimed to have had firsthand knowledge of firearms being located within the Residence as recently as March 2019.  [Winn Aff. ¶ 14].  Each of the witness statements is specific, based on firsthand knowledge, consistent with the others, and, to the extent possible, corroborated by the agents.  The evidence as a whole justified Judge Baverman's determination that probable cause supported the search warrant.

Defendant also argues that because the tipster tried to shield their identity, the tipster's veracity and reliability are called into question.  While this could be true in some circumstances, the nature of the information provided here was sufficiently detailed and, to the extent it could be verified, correct.  The tipster's knowledge that Defendant had a prior conviction for a crime involving armed bank

---

[4]  The Government notes that there is an error in the affidavit.  Special Agent Winn avers that Defendant was convicted of armed bank robbery and possession of a firearm during a crime of violence.  [Winn Aff. ¶ 16].  The Government clarifies that Defendant was actually convicted of attempted armed bank robbery with kidnapping and possession of a firearm during a crime of violence.  [Doc. 47 at 8–9, n.2].  I find the error irrelevant for purposes of the present motions before the Court.

robbery and the illegal use of a firearm provided additional corroboration of the tipster's veracity and provided an additional basis for Judge Baverman's probable cause determination.  See United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (holding that an informant's knowledge about the defendant's previous drug-smuggling activities corroborated the informant's veracity).  I conclude that under the totality of the circumstances, there was at least a fair probability that contraband or evidence of a crime would be found at the Residence at the time Judge Baverman signed the warrant.  As such, the warrant was supported by probable cause.

**B.    Whether the Information Was Stale**

Defendant next argues that the information forming the basis for probable cause was too old to be probative as to whether evidence of a crime would be found at the Residence.  Defendant points out that Relative #1's information (that Defendant possessed firearms on or around Christmas 2018) was five months old at the time it was included in Special Agent Winn's affidavit.  And, although Relative #2 said that they had seen firearms in Defendant's home as recently as March 2019 (two months before the warrant was issued), Relative #2 did not specify that Defendant actually possessed firearms at that time.  Defendant points out that other persons lived in the Residence who could have lawfully possessed

firearms at that time.  Defendant argues that Relative #2's statement that they had seen Defendant with firearms and body armor "within the past several years" was not sufficiently timely to support a probable cause finding.  According to Defendant, the affidavit was so lacking in probable cause that it was unreasonable for the FBI agents to rely upon it when searching the Residence.  [Doc. 40 at 5].

"For probable cause to exist . . . the information supporting the government's application for a search warrant must be timely . . . .  [P]robable cause must exist when the magistrate judge issues the search warrant."  United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994), *holding modified by* United States v. Toler, 144 F.3d 1423 (11th Cir. 1998).  In determining whether information is stale, the Court must look at the unique facts of each case and consider multiple factors, including the nature of the suspected crime, character of the items sought, and the nature and function of the premises to be searched.  See United States v. Bervaldi, 226 F.3d 1256, 1265 (11th Cir. 2000) (quoting Harris, 20 F.3d at 450).  Because courts must do this case-by-case analysis, "[t]here is no particular rule or time limit for when information becomes stale[.]"  United States v. Truitt, No. 1:14-CR-0393-AT, 2015 WL 2452944, at *11 (N.D. Ga. May 13, 2015) (quoting Bervaldi, 226 F.3d at 1265).

Based on the facts presented in this case, I conclude that the information contained in Special Agent Winn's affidavit was not stale at the time Judge Baverman signed the warrant.  Less than a week before obtaining the warrant, the agents conducted surveillance on the Residence and confirmed that Defendant lived there.  The fact that the reported illegal activity had occurred a few months to a few years in the past does not defeat probable cause.  The crime of possession of a firearm by a convicted felon is ongoing in nature, and the Eleventh Circuit has made clear that older information may still be relevant to the question of present probable cause in warrants seeking evidence of ongoing crimes.  See United States v. Piloto, 562 F. App'x 907, 913 (11th Cir. 2014) (concluding that thirteen-month-old information about a convicted felon possessing a firearm was not stale and holding that it was reasonable to believe that someone who illegally possessed a gun in the past would continue to possess the gun thirteen months into the future). Moreover, unlike other items that may be consumed or waste away, guns are by their nature more likely to remain for long periods of time, especially in the home where they are often kept for protection.  See id.; see also United States v. Deering, 296 F. App'x 894, 898 (11th Cir. 2008).   I conclude that the information supporting the application for the search warrant for Defendant's home was timely.

C.      **Whether Material Information Was Omitted from the Affidavit**

Finally, Defendant argues that he is entitled to an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) because Special Agent Winn failed to include two important facts in his affidavit: (1) that three people (Defendant's father, wife, and step-daughter) resided at the Residence and were not prohibited from possessing firearms; and (2) that the informants are related to Defendant's half-brother, who is currently in a dispute with Defendant's father over ownership of the Residence. [Doc. 40 at 6]. Defendant claims that because of these omissions, the affidavit gave the false impression that no one at the Residence could lawfully possess firearms and that the informants were on good terms with Defendant and had access to the Residence. [Id. at 6–7].

Affidavits supporting search warrants are presumptively valid. See Franks, 438 U.S. at 171. "Thus, a defendant is generally not entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit." United States v. Price, 582 F. App'x 846, 850 (11th Cir. 2014). To be entitled to an evidentiary hearing on a motion to suppress based on misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that: (1) the affiant made false statements; (2) the false statements were made either intentionally or with reckless disregard

15

for the truth; and (3) the false statements were necessary to the finding of probable cause.  See Franks, 438 U.S. at 171–72.  Material omissions from a supporting affidavit may also give rise to entitlement to a Franks hearing.  See United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009).

Defendant's first argument—that agents should have advised Judge Baverman that other people lived in the house—is meritless.  In Attachment A to his affidavit, Special Agent Winn describes the property to be searched and states, "MORELOCK resides there with his wife, children, and brother."  [Doc. 47-1 at 9].  Although that fact was not contained in the body of the affidavit, it is obvious that Special Agent Winn did not intentionally hide this fact.

As for the argument that the agents should have informed Judge Baverman about an ongoing family dispute, Defendant has failed to make the requisite showing that Special Agent Winn omitted information about the family dispute intentionally or with reckless disregard for the truth; there is no evidence that Special Agent Winn was aware of the dispute.  Moreover, Defendant has failed to show that if the existence of the family dispute was included in the affidavit, that the probable cause determination would have been affected.  I note that it is not uncommon for informants to have incentives to cooperate.  Judge Baverman had all the information he needed to assess the relationship of the individuals, including

16

the fact that the witnesses were providing information about the criminal activity of a family member.  Judge Baverman had sufficient information to draw his own conclusions as to the veracity and reliability of information from relatives. Defendant has not made a sufficient preliminary showing to warrant a <u>Franks</u> hearing.  Accordingly, his request for an evidentiary hearing is denied.

## D.   **Good Faith - <u>Leon</u>**

Finally, even if there was an issue with the factual basis for the probable cause determination, the warrant nevertheless would be saved by the good faith exception to the exclusionary rule articulated in <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984).   In <u>Leon</u>, the U.S. Supreme Court held that even if a search warrant is not supported by probable cause, the Fourth Amendment will not bar the admission of evidence obtained by law enforcement officers if the officers were acting in reasonable reliance upon the search warrant.  <u>See</u> <u>United States v. Martin</u>, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing <u>Leon</u>, 468 U.S. at 922).  The Eleventh Circuit interpreted <u>Leon</u> as follows:

> The <u>Leon</u> good faith exception applies in all but four limited sets of circumstances.   The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in <u>Lo-Ji Sales, Inc. v. New York</u>; (3) where the affidavit supporting the warrant is "so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid."

Martin, 297 F.3d at 1313 (internal citations omitted). None of these four circumstances applies here. Accordingly, even if the search warrant were not supported by probable cause, the Leon good faith exception to the exclusionary rule would apply. There is no basis for suppression.

For the foregoing reasons, I recommend that Defendant's motion to suppress evidence seized pursuant to the warrant be denied.

### III. <u>MOTION TO SUPPRESS STATEMENTS</u>

On September 11, 2019, I held an evidentiary hearing on Defendant's motion to suppress statements. [Doc. 49, Transcript ("Tr.")]. Two witnesses testified at the hearing. The Government called Special Agent Winn, and Defendant called his wife, Ashley Morelock.

According to the testimony, on May 1, 2019, approximately sixteen armed law enforcement officers went to Defendant's home at 6:15 in the morning to execute the federal search warrant that Judge Baverman had signed the previous day. [Tr. at 4, 5]. At that time, Special Agent Winn knew what Defendant looked like, that both Defendant and his brother, Patrick Neal Sullivan, resided at the

house, and that both had been convicted in the 1990s for their involvement in a kidnapping and armed bank robbery.  [Id. at 4, 18–21].

Several officers, including Special Agent Winn, knocked on the front door, announced their presence and the fact that they had a search warrant, and demanded that the occupants open the door.  [Tr. at 5, 21–22].  All of the officers were armed and wearing tactical vests that identified them as law enforcement, and those at the front of the stack had their guns drawn.  [Id. at 21].

Special Agent Winn testified that he could hear people talking behind the door, but they refused to open the door.  [Tr. at 5, 22].  He also noticed a security camera, which caused him concern because he knew Defendant was a convicted violent felon with a history of weapons possession.  The fact that a person with this history was not complying with his instructions and could be watching the officers on a video monitor caused him concern.  [Id. at 6, 22].  Special Agent Winn then breached the door by kicking it.  [Id. at 6].  At this point, he and the other agents had their guns drawn for officer safety.  [Id. at 7].  Once the agents entered the residence, they saw Defendant and his brother close to the door.  [Id.].  Defendant was not wearing a shirt or shoes, but his brother was dressed and holding a dog.  [Id. at 23, 31].

19

The agents asked Defendant to exit the Residence.  [Tr. at 7–8].  Special Agent Winn testified that when Defendant did not immediately comply (and was saying things like, "What are you doing here, no, no"), he grabbed Defendant and pulled him out of the house.  [Id.].  Defendant was then passed back to other agents who took him to the ground and handcuffed him.  [Id. at 8].  Special Agent Winn stated that Defendant was handcuffed for officer safety because he was not compliant, and the agents needed to secure the scene.  [Id.].  Special Agent Winn testified that the agents did not handcuff Defendant's brother because he was compliant, the agents knew that he had some ailments and was not physically well, and it was evident from the brother's clothes that he was not armed.  [Id. at 9, 31].  By contrast, Special Agent Winn stated that Defendant was not compliant and was wearing cargo pants with bulky pockets such that he could not determine whether Defendant was armed.  [Id. at 31].

Defendant was then taken away from the house to the street where he was allowed to lean or sit on a government vehicle while the Residence was secured.  [Tr. at 31].  During this time, Defendant was monitored by an armed officer, and there were other armed officers close by.  [Id. at 25, 29].

After about five to ten minutes, Special Agent Winn removed Defendant's handcuffs.  [Tr. at 9].  Special Agent Winn testified that he told Defendant that

20

Defendant was not in custody. [Id. at 11, 13–14]. He also testified that he removed the handcuffs because Defendant had become compliant, Defendant was not giving the agents any problems, and the location was secure. [Id. at 9–10]. Defendant was allowed to go inside to get clothing and to secure a dog in a crate. [Id. at 10]. In response to questions from defense counsel as to whether Defendant was allowed to retrieve his car keys from the kitchen, Special Agent Winn testified that Defendant never asked for his keys, but if Defendant had asked, Defendant would not have been allowed to go into the kitchen to get his car keys. Special Agent Winn testified, however, that if Defendant had asked for his keys, one of the agents would have retrieved them for him. [Id. at 26–28].

Approximately twenty minutes after the agents first arrived, Special Agent Winn asked Defendant if he would be willing to speak with him. [Tr. at 11]. Defendant agreed, and he was taken to another government vehicle to do the interview. [Id. at 11–12]. Defendant was not in handcuffs at this point and Special Agent Winn had removed his tactical vest. [Id. at 12]. Special Agent Winn and the other officer present for the interview did not have their guns drawn. [Id. at 11–12]. Special Agent Winn also testified that neither he nor the other officer used any physical force or threatened Defendant during the interview; they did not yell at Defendant. [Id. at 12, 14]. According to Special Agent Winn, the interview

took place near a government vehicle in the street, and they were all standing. [Id. at 14].

Special Agent Winn did not give Defendant <u>Miranda</u> warnings before the interview. [Tr. at 11]. When asked why not, Special Agent Winn testified that Defendant "was not in custody. I made that very clear to him that he was not in custody, that he could leave." [Id.]. Special Agent Winn described Defendant as "pleasant" and "very calm" during the interview. [Id. at 14–15]. The interview lasted approximately twenty minutes and was recorded. [Id. at 12, 15; Gov. Ex. 1]. Defendant refused to answer several questions, and when that happened, Special Agent Winn moved on to the next question and told Defendant that Defendant did not have to answer any questions. [Id. at 15–16]. Special Agent Winn testified credibly that Defendant never asked to stop the questioning, to speak to a lawyer, or to leave. [Id. at 16]. At the end of the interview, Special Agent Winn asked Defendant about some safes located inside the house, and Defendant offered to go inside to get the keys for him. [Id. at 16–17]. The two went back into Defendant's bedroom where Defendant retrieved a key ring from the left nightstand. [Id. at 17]. Defendant then went back outside. [Id. at 17–18]. About an hour later, while standing on the road, Defendant was formally arrested. [Id. at 10, 18, 28].

Defendant's wife, Ashley Morelock, testified about the video recordings from two cameras on the exterior of the Residence that captured some of the events on the day of the search, and those recordings were offered into evidence. [Tr. at 33–34; Def. Ex. 1]. The videos corroborate Special Agent Winn's testimony regarding the sequence of events.

In his motion to suppress, Defendant argues that the statements he made on May 1, 2019 should be suppressed because he was not given <u>Miranda</u> warnings. The Fifth Amendment of the U.S. Constitution prohibits the use of an involuntary confession against a defendant in a federal criminal trial. U.S. CONST. amend. V. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the U.S. Supreme Court held that the prosecution may not use statements stemming from custodial interrogation of a criminal defendant unless it demonstrates the use of procedural safeguards, including notifying the person of his right to remain silent. "[T]he <u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or the functional equivalent. <u>See</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300–01 (1980). The parties agree that Special Agent Winn interrogated Defendant, but they disagree as to whether Defendant was in custody.

Custody is established if, in light of the circumstances of an interrogation, a reasonable person would have felt that he was not at liberty to terminate the

interrogation and leave. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663 (2004). The test is objective: whether a reasonable person in the defendant's position would feel a restraint on his freedom equivalent to that normally associated with formal arrest. <u>See</u> <u>Berkemer v. McCarty</u>, 468 U.S. 420, 441 (1984); <u>United States v. Torkington</u>, 874 F.2d 1441, 1445 (11th Cir. 1989). The Eleventh Circuit considers several factors in applying this objective test, including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled. <u>See</u> <u>United States v. Street</u>, 472 F.3d 1298, 1309 (11th Cir. 2006). No particular fact in the "custody" analysis is outcome determinative; rather, the court simply weighs the totality of the circumstances. <u>See</u> <u>United States v. Lall</u>, 607 F.3d 1277, 1284 (11th Cir. 2010). Defendant carries the burden of showing that he was in custody, and therefore, that <u>Miranda</u> warnings were necessary. <u>See</u> <u>United States v. de la Fuente</u>, 548 F.2d 528, 533 (5th Cir. 1977); <u>United States v. Peck</u>, 17 F. Supp. 3d 1345, 1353–55 (N.D. Ga. 2014).

Here, the totality of the circumstances, including the specific factors identified by the Eleventh Circuit, weigh in favor of a finding that Defendant was not in custody at the time of the interview. Special Agent Winn testified credibly that at the time Defendant was questioned, Defendant was not in handcuffs; that

the agents did not touch Defendant in any way; that the agents' weapons remained holstered during the interview; that the agents did not raise their voices or yell at Defendant; and the interview was relatively short, only twenty minutes.  There is no evidence that the agents used language or a tone that indicated that compliance with the agents could be compelled, nor is there any evidence that Defendant was under duress.  Moreover, Special Agent Winn testified that he told Defendant that he (Defendant) was free to leave, and Defendant presented no evidence to contradict that testimony.  This fact weighs heavily in favor of finding a non-custodial interrogation.  See United States v. Matcovich, 522 F. App'x 850, 851 (11th Cir. 2013) (describing as a "powerful factor" the circumstance where a defendant is unambiguously advised that he is free to leave and noting that such advise generally will lead to the conclusion that the defendant is not in custody).

In support of his contention that he was in custody during his interview, Defendant points to the following facts:

- he was pushed to the ground and handcuffed at the beginning of the encounter;

- the agents did not tell him that they would retrieve his car keys if he wanted to leave;

- he was not allowed full access to his residence; he was given access only for the limited purposes of getting dressed and then to help secure the dog; and

25

- the agents treated his brother differently than they treated him because (1) his brother was not pushed to the ground or handcuffed, (2) his brother was allowed to stand by the front door whereas Defendant had to stand by a government vehicle on the street, and (3) during the search, Defendant was constantly monitored by an armed officer, while his brother was not similarly monitored.

According to Defendant, these circumstances would lead a reasonable person to believe he was not free to leave the scene.  [Doc. 52 at 9–11].  The Government responds that a reasonable person in Defendant's position would have understood that he could leave.  [Doc. 53 at 9–14].

I agree with the Government that the facts upon which Defendant focuses do not convert the encounter into a custodial interrogation.  The evidence shows that there was good reason to initially handcuff Defendant and that once the location was secured and Defendant was compliant, the handcuffs were removed.  The evidence also shows that there were valid reasons to treat Defendant differently than his brother.  Defendant cites no authority for his argument that the mere fact that Defendant was treated with more caution than his brother should mean that Defendant was not free to leave.  And, although Defendant's access to parts of his house were limited, he ultimately was allowed to get dressed.  There is no evidence that Defendant was ever told that he could not leave or could not have his car keys. In fact, there is credible evidence to the contrary.

For these reasons, I conclude that Defendant has not carried his burden of establishing that he was in custody, for <u>Miranda</u> purposes, during his interview on May 1, 2019. Given the totality of the circumstances, a reasonable person in Defendant's position would not have felt a restraint on his freedom of movement to such an extent that he would not feel free to leave. Therefore, Defendant's motion should be denied.

## IV.   <u>CONCLUSION</u>

For the reasons stated, I **RECOMMEND** that the four pending motions [Docs. 36, 38, 40, 43] be **DENIED**. I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**SO REPORTED AND RECOMMENDED**, this 9th day of December, 2019.

CATHERINE M. SALINAS
United States Magistrate Judge